WM. MONTGOMERY *vs.* E. D. WHITWORTH & others.

April Term, 1873.

PARTIES, SHERIFF.—The sheriff is not a necessary party to a bill to have a homestead in lands ordered to be sold by this court, and seeking to enjoin the sale, and the bill will be dismissed as to him on demurrer.

PRACTICE, INJUNCTION, DECREE.—The practice of the Chancery Court of this state has been to enjoin, upon sufficient cause shown, the execution of its own decrees, in the same way and upon the same terms as it enjoins the execution of judgments of other courts, and the court, upon examination, sees no reason to change the practice.

*W. G. Brien*, for complainant.

*John Ruhm*, for defendants.

THE CHANCELLOR :—This is an original bill filed to have the complainant's rights as the head of a family to a homestead declared in certain property and set apart to him, or one thousand dollars in lieu thereof paid him out of the proceeds of sale. The property in controversy had been attached by the defendants Olwell Bros. by bill filed in this court, in which a decree had been obtained for the sale of the property for the satisfaction of the complainants' debt, and the property sold in accordance therewith. The complainant in the present bill prayed for an injunction "enjoining the defendants from proceeding further with their said suit." A fiat as prayed was granted by the Hon. J. C. Gould, Judge, and the injunction was issued and executed.

The bill, after setting out the facts upon which the complainant bases his claim to a homestead, avers, "that at the time the said land was attached, it was the duty of the officer levying to set apart his homestead in the manner prescribed under the statute, but he is informed he wholly failed so to do." The bill then makes E. D. Whitworth, sheriff of Davidson county, a defendant, and asks that said sheriff be now required, if it can be done, to set apart said homestead.

The sheriff has demurred to the bill upon the ground, among others, that he is not a necessary party to the bill as appears from the face thereof. The other defendants have moved to discharge the injunction, as irregularly and improvidently granted.

The bill, it will be noticed, alleges that it was the duty of the sheriff, when he levied the attachment, to have set apart to the complainant a homestead according to law, and that he failed so to do. But the bill fails to show that any application was made to the sheriff at the time to set apart the

homestead, or that the sheriff knew that the complainant was in possession of the property and entitled to such homestead. Nor does it seek any relief against the sheriff for such failure. In argument, it was suggested by the learned counsel of the complainant, that the object of making him a defendant was in order that he might be made to set apart the homestead, if the court thought that it could be done now. But it is obvious that it was not necessary to this end that the sheriff should be made a defendant. He is a public officer, bound, as such, to obey the mandates of this court whether he is a party to the suit or not. It is only when an officer has made himself individually liable to the suitor, and the object of the complainant is to obtain a personal decree upon such liability, that public officers should be made defendants. In all other cases it is a useless form. For, it has long been the law of the state that no valid decree can be pronounced against the officer, who is simply made defendant in his official capacity, although the bill be taken for confessed against him. *McGavock* v. *Elliott*, 3 Yer. 373. An officer is often made a defendant to the bill upon the idea that it is necessary that he should be a party in order to make effectual service upon him of an injunction or other extraordinary process. But this is a mistake. Such process operates upon the officer through the party who has the right to control his action, and, moreover, it may be executed upon the officer as upon any other agent of the party without going to the expense of bringing him before the court. *Stinson* v. *McMurray*, 6 Hum. 339 ; *Overton* v. *Perkins*, M. & Yer. 373. Public officers ought not to be unnecessarily annoyed, and interfered with, by being made even nominal parties to a litigation. The demurrer of the sheriff in this case must be sustained.

The motion to discharge the injunction raises a question of far more gravity. It is based upon the ground that a court of chancery will not enjoin the execution of its own decrees, but will only, upon a proper case made, withdraw its process, or stay the execution by granting a *supersedeas*.

The position contended for is sustained by the authorities.

The 23d ordinance of Lord Bacon is in these words: "In the case aforesaid, where an injunction is to be awarded for stay of suits at the common law, if like suit be in the chancery, either by *scire facias*, or privilege, or English bill, then the suit is to be stayed by order of the court, as it is in other courts by injunction, for that the court cannot enjoin itself." "An injunction, says Mr. Hoffman, Ch. Pr. 89 and note, is not the proper mode of obtaining a stay of proceedings under a bill or decree in chancery, whether the application be by parties or privies, or by a stranger who has filed a new bill. The court should be applied to by petition for an order. *Dyckman* v. *Kernochan*, 2 Paige, 26; *Newton* v. *Douglass*, in ch. March, 1832. The latter case was a bill by a stranger to stop proceedings under another bill in this court making both parties to that bill defendants; and the Chancellor set aside an injunction which had been granted by the master." "There is reason in this rule, says Vice Chancellor Whittelsey, in *Smith* v. *Amer. Ins. & T. Co.* 1 Clarke's Ch. Rep. 307. If a contrary rule should be adopted, it would be difficult in some cases to foresee a termination of litigation. Nor will the rule work any injury. A party, privy, or even stranger to the pending suit, is not without redress. He may apply by petition in the original cause for such an order as the case made by his petition will entitle him to." See also to the same effect, *Lane* v. *Clark*, 1 Clarke's Ch. Rep. 309.

In *Greenlee* v. *McDowell*, 4 Ire. Eq. 483, the court said that "An application to a court of equity to restrain its own proceedings is certainly a novelty. We are not apprised of any precedent for such a bill.  *  *  But the court add, although a court of equity cannot, with propriety, be asked to enjoin the use of its own process, which it has previously granted to execute its own orders and decrees, yet a party aggrieved, or supposing himself to be so, by its use, is not without redress. The court can, and upon a proper case made, supported by affidavits, will withdraw the process itself or stay an execution by granting a *supersedeas*.."

In *Medlock* v. *Cogburn*, 1 Rich. Ch. 477, it is said the court does not enjoin its own proceedings, though it may rescind or suspend its order upon proper cause shown."

Upon the strength of these cases, Mr. Hilliard has, in his work on Injunctions repeated the rule thus enunciated in two or three places. Hill. on Inj. ch. 1, § 64; ch. 6, § 38. And Mr. Hicks in his Manual has warmly advocated it. Sec. 223, subs. 5 and section 223 *a*, subs. 3. He cites *Butler* v. *Peyton*, 4 Hay. 88, where the order, upon an original bill, was to suspend the execution of the former decree until further order, and was granted upon the analogy of the proceeding to that authorized by act of 1801, 6, 53, in the case of a bill of review. The language of 1801, 6, 53, is, "May direct such security to be given, and in such place as is usual in cases of injunction." And by the Code, § 4491, it is provided that the court may direct such security to be given, and in the same way "as in the case of injunction."

On the other hand, in *Galloway* v. *Alexander*, 8 Leigh, 114, *Luckett* v. *White*, 10 Gill, & Johns. 480, and *Edmondson* v. *Mosely* 4 J. J. Mar. 497, the court seem to consider the enjoining by the chancery court of its own decrees, upon a proper case, as a matter of course. And so do our own supreme court in *Herd* v. *Bewley*, 1 Heisk. 525, and in a large number of cases in our reports where the statements show that the process of injunction was resorted to. The practice, certainly in Middle Tennessee, has been for over a quarter of a century to enjoin a decree in the same court as readily as a judgment in a court of law. It is true, the usage has passed without challenge, no point having been made in regard to it, but the law should be very clear, and the necessity very strong, to justify a violent change in so uniform and long continued a practice.

Upon examination I do not find anything in the English decisions which throw much light in the subject. This is owing to the fact that by the famous orders of Lord Bacon, parties were forbidden to impeach decrees until they had performed them. The third and fourth of these Rules pro-

vide that: "No bill of review shall be admitted, or any other new bill, to discharge matter decreed, except the decree be first obeyed and performed. * * * But if any act be decreed to be done which extinguisheth the parties rights at the common law * * those parts of the decree are to be spared until the bill of review be determined; *but such sparings is to be warranted by public order made in court.*" Beames' Orders. It is said by Lord Lyndhurst, in *Partridge* v. *Usborne*, 5 Russ. 249, where the old precedents are collected, that since *Palmer* v. *Danby*, in 1695 it does not appear that there has been a decision on the point of dispensing with the rule requiring obedience to the decree as a pre-requisite to the filing of a bill to impeach that decree, "so that in no instance during a hundred years has the rule been dispensed with." An observation, he adds, which would be entitled to much greater weight were it not for the fact that very few instances have occurred during that period of bills of review having been allowed to be filed. The orders of Lord Bacon, and the rigid adherence to them by the English courts have effectually prevented any precedents on the subject now under discussion. But, singularly enough, the only cases which bear upon the matter, namely, administration suits where a decree for an account has been made to operate as an injunction upon all creditors, and to stay proceedings in the court of Exchequer on its equity side, as well as judgments at law, seem to sanction the practice which has prevailed in this state. *Jackson* v. *Leaf*, 1 Jac. & W. 232; *Paxton* v. *Douglass*, 8 Ves. 520.

The frequency of bills impeaching decrees in this country is in marked contrast with their rarity in England. There are more of such bills filed in this court at any single term than seem to have sufficed for our English ancestors for over a hundred years. The main reason for this is no doubt the enlarged jurisdiction of our courts, and the numerous instances in which decrees are allowed, under our laws, without actual service of process. Something, too, is due to the recklessness of our people, and the shortness of

legal training in our profession.    In this state Lord Bacon's ordinance was in effect abrogated by the act of 1801, ch. 6, § 53, since the passage of which act it has been a matter of course to grant injunctions against the execution of decrees of the same court, as readily, and as much a matter of course, as against the execution of judgments at law.

The American cases which seem to hold that an injunction will not lie to restrain a decree in the same court may all be traced back to the rulings cited in Hoff. Pr. as quoted above. But neither of the cases cited, when examined, sustains the deduction drawn from them.    Both of them merely decide that an injunction *granted by the master* to stay proceedings in another suit in the same court is not authorized.    "The master, they say, went beyond his authority in allowing an injunction to restrain the defendants from carrying into effect a decree of this court."    This may well be, either upon the ground that the statute under which the masters acted did not authorize such an extension of their power, or, more probably because the ordinance of Lord Bacon, as we have seen, expressly required the stay in the excepted cases "to be warranted by public order made in court."    In analogy, the learned Chancellor of New York might well hold that "to restrain the carrying into effect a decree" of this court, required a public order made in court.    In *Dyckman* v. *Kernochan*, 2 Paige, 26, the Chancellor added, that in the case before him an original bill was not required for the purpose sought; a petition to the Chancellor was all that was necessary.    These decisions, it is obvious, do not justify the genral rule deduced from them by Hoffman, and which is the rule relied on by the subsequent cases, and which has been carried out to its logical sequence in recent New York cases. See *Dederick* v. *Hoysradt*, 4 How. Pr. 350.    The *effect* of the rule as subsequently understood is to require the application for stay of proceedings to be in the original cause, and it would be necessary for the party aggrieved not merely to set out his case in his bill impeaching the former decree, but to prepare a similar statement, in the form of a petition in

the original cause. In other words, there must be two pleadings, precisely the same in substance, and only differing in form—one being a bill, the other a petition—to accomplish the end which ought to be obtained by one proceeding. The authorities seem, moreover, to require the prayer for the *supersedeas* to be made in the original cause, while Mr. Hicks thinks the restraining process may be prayed for in the bill itself. Hicks Manual, p. 430.

· When the reasons given for the supposed rule are examined, they will be found to be contradictory, and unsatisfactory. The reason suggested by Vice Chancellor Whittelsey in *Smith* v. *Amer. Ins. & Tr. Co.* 1 Clarke, 307, is that " if a contrary rule should be adopted, it would be difficult in some cases to foresee a termination of litigation." But, it is not easy to see how this would follow. The injunction in the new suit would be as much under the control of the court as the restraining order in the original suit. And, *e contra,* the restraining order in the original suit would seem as likely to render it difficult to foresee the termination of litigation as the injunction in the new suit. This reason will not stand the test of logic.

The reason given by the Supreme Court of North Carolina in *Greenlee* v. *McDowell* 4 Ire. Eq. 483, is, that, when a court of equity "is called upon to enjoin its own proceedings, it is asked to pronounce that to be iniquitous and wrong, which it has already declared to be right and proper." But if so, would it not equally follow from an order of *supersedeas* granted on petition in the original cause? What is the distinction, in substance, between an injunction and a *supersedeas,* that the dignity of the court should be implicated by the one and not by the other? The truth is, the stay of a decree of the same court, upon good cause shown, whether it be by injunction or *supersedeas,* is upon precisely the same ground that injunctions are often granted to stay proceedings in other courts—namely, that these proceedings are wrongful, either by reason of fraud, error of law apparent, or outside facts. The court of chancery is not infallible any

more than the court of law, and need not hesitate to correct its own errors by the same means by which it ordinarily undertakes to correct the errors of other courts. The reason given by the North Carolina court is not more satisfactory than the reason assigned by the Vice Chancellor of New York.

The ordinance of Lord Bacon and the decision of Chancellor Walworth declare the true rule, which is that the restraining order, whether it be by injunction in the new suit or *supersedeas* in the original suit, should be " warranted by public order made in court." Story Eq. Pl., § 406. This is all that was decided by Chancellor Walworth (one of the ablest judges America has produced), in *Dyckman* v. *Kernochan*. It is not a case for the common injunction or such as a master is authorized to grant. The application should be to the court. But our legislature has seen proper, by § 4434 of the Code, to confer upon all chancellors and judges the power concurrently to grant injunctions and other extraordinary process, and the statute has been held to apply to the granting of an injunction suspending the execution of a chancery decree, precisely as in this case. *In re Thomas Chadwell*, 7 Heisk. 630, recently decided. The statute, therefore, has changed the English rule of practice followed by Ch. Walworth, and authorizes the process to be granted out of court by any judge or chancellor.

Whether I am right in the reasonings I have submitted or not, I am satisfied that the authorities relied on do not justify me in changing the uniform practice of this court ever since I have been a member of the bar, and, as I am informed, long before, and recognized by the supreme court as proper. The motion to discharge the injunction as improvidently granted is therefore disallowed.

It remains to be considered whether the injunction granted in this cause should be dissolved or modified. It enjoins the defendants from proceeding further with their suit, and the bill shows that the suit has progressed to a sale of the premises in dispute. It does not appear from the face of

the bill that the lot, which has only a front of 50 feet with a small tenement thereon of three rooms, is susceptible of division so as to make it possible to set apart a homestead as claimed. Moreover, it does appear that the title of this complainant was only equitable, and the property was actually sold before the bill was filed. The bill fails to make out a clear case entitling complainant to have the homestead in kind. Under these circumstances, I will, for the present, modify the injunction so as to allow the defendants to proceed in the suit enjoined, and only enjoin the paying over of the purchase-money of the land to the extent of one thousand dollars under the decrees in that cause until further order. The court may, upon a hearing of the original cause, reinstate the injunction.